UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| SYDNEY WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:10CV00081LMB |
| ) | |
| CITY OF MARSTON, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the court upon plaintiff's Complaint alleging retaliation in violation of the Missouri Human Rights Act, Mo. Rev. Stat. § 213.010; deprivation of rights under 42 U.S.C. § 1981 and § 1983; and violation of the Missouri Sunshine Law, Mo. Rev. Stat. § 213.010.  This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties under 28 U.S.C. § 636 (c).

On February 4, 2011, the court entered summary judgment in favor of Defendant City of Marston on Count I, Count II, Count IV, Count VI, and Count VII of plaintiff's Complaint.

Presently pending before the court is Defendant City of Marston's Motion for Summary Judgment on all remaining counts:  Counts III, V, and VIII.  (Document Number 28).  Plaintiff has filed a Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. No. 32), to which defendant has filed a Reply (Doc. No. 34).  Plaintiff has also filed a Sur-Reply. (Doc. No. 37).

1

## **Factual Background**[1]

Viewed in the light most favorable to the plaintiff, the record reveals the following facts. Plaintiff sued the City of Marston, Missouri ("City") in 2001, alleging racial discrimination in the hiring process.  Plaintiff was hired as a police officer for the City during or about May 2002. During 2003, plaintiff became the Chief of Police for the City after the prior Chief of Police left. Plaintiff was the only officer in the police department at the time of becoming the Chief of Police.

Plaintiff was changed from an hourly employee to a salaried employee in July 2006, with a salary of $650.00 per week.  On July 10, 2007, plaintiff's salary was raised to $700.00 per week.

On or about November 5, 2007, Glenn Hayes was promoted to Water Superintendent, with a salary of $650.00 per week.  Plaintiff, as Chief of Police, and Mr. Hayes, as Water Superintendent, were both on call 24 hours a day, seven days a week.

On or about February 19, 2008, Mr. Hayes was denied a raise request of $50.00 per week.

On April 15, 2008, plaintiff was re-awarded 120 hours of vacation time and sick leave used as a result of injuring her hand on her personal time around the end of December 2007, because plaintiff threatened to sue the City.

At the May 13, 2008 Board of Aldermen meeting, Mr. Hayes requested a $150.00 a week raise, but received a $50.00 a week raise, increasing Mr. Hayes' salary to $700.00 a week.

Plaintiff claims that she was asked to take a pay cut during or about August or September of 2008, due to alleged financial difficulties.  The City has no record to indicate any formal

---

[1] The court's recitation of the facts is taken from defendant's Statement of Uncontroverted Material Facts (Doc. No. 29-1), Plaintiff's Statement of Material Facts in Dispute (Doc. No. 33), and defendant's Reply to Plaintiff's Response to Statement of Uncontroverted Material Facts (Doc. No. 35).

request for a pay cut was made to plaintiff.

At the September 16, 2008 Board of Aldermen meeting, plaintiff's work hours were changed from 8:00 a.m. through 5:00 p.m., to 4:00 p.m through 12:00 a.m., in an alleged effort to raise more funds for the police department.[2] The number of citations issued was reduced during 2008 from prior years.[3]

On October 14, 2008, the Board of Aldermen laid off plaintiff due to alleged financial difficulties.[4] Eliminating a police department for the City saved expenses incurred from plaintiff's salary, municipal court clerk, police vehicle expenses, officer education expenses, document production, judge costs, and city attorney costs.[5]

Plaintiff alleges in her Complaint that Alderman Richard Strawser stated after the October 14, 2008 Board of Aldermen meeting that the Board had "fired that nigger," and that this statement was heard by Sammy Ash, Gerald Brock, Julie Brock, Junior Phillips, and Shirley Phillips. Alderman Strawser is now deceased. Sammy Ash, Gerald Brock, and Julie Brock have stated in affidavits that they were present at and after the October 14, 2008 Board meeting, but did not hear Alderman Strawser make any such statement. Mr. Ash states that he called Shirley Phillips on November 16, 2001, and that Ms. Phillips stated that she was at the October 14, 2008

---

[2]Plaintiff disputes this fact, claiming that she issued just as many tickets on the day shift as the night shift, and therefore generated approximately the same amount of revenue.

[3]Plaintiff disputes this fact, although defendant has attached reports indicating that the number of citations issued in 2008 decreased by more than half.

[4]Plaintiff disputes that the City laid her off due to financial difficulties, noting that the City hired employees and gave other employees raises shortly prior to terminating her.

[5]Plaintiff disputes that there was any cost savings for the city attorney not having to attend municipal court.

meeting but did not hear Alderman Strawser make any such statement.  Mr. Ash further states that Junior Phillips could be heard in the background stating that he did not remember being at the meeting at all.  Mr. Ash states that Mr. and Mrs. Phillips did not want to get involved in this lawsuit by executing any affidavits.  Mr. Phillips subsequently executed an affidavit, in which he states that he attended the October 14, 2008 Board meeting, and following the meeting, he heard Alderman Strawser state: "We ain't giving that nigger nothing" in reference to plaintiff.

On June 22, 2009, plaintiff filed a charge of discrimination with the EEOC and the Missouri Commission on Human Rights asserting that she was discriminated against on June 11, 2009 due to her race and her sex, stating that she was discharged on June 11, 2009, had been denied a raise several times, and was asked to take a pay cut but refused.

On or about July 14, 2009, plaintiff filed a charge of discrimination with the EEOC and the Missouri Commission on Human Rights asserting that she was retaliated against on July 8, 2009, by being denied the right to make copies of documents at City Hall.

Plaintiff claims that both Tracy Noble and Dawn Ferguson, the Collector and Clerk, were present on July 8, 2009, when plaintiff came into City Hall to request copies of the June 11, 2009 Board meeting minutes.[6]  Plaintiff alleges that Ms. Noble and Ms. Ferguson both informed plaintiff that Mayor Redden had instructed them not to give plaintiff copies of anything they had at City Hall because she was suing the City.  Plaintiff eventually obtained the minutes of the June 11, 2009 Board meeting.

---

[6]The parties dispute who was present and what occurred when plaintiff requested the June 11, 2009 Board minutes.

4

**Discussion**

In its Motion for Summary Judgment, defendant argues that plaintiff is unable to present a prima facie case of discrimination under 42 U.S.C. § 1981. Defendant next contends that the court has no jurisdiction over plaintiff's remaining state law claims. Defendant also argues that plaintiff is unable to present a prima face case of retaliation under the Missouri Human Rights Act, or of a violation of the Missouri Sunshine Law.

**A.     Summary Judgment Standard**

A court may grant summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, according to Federal Rule of Civil Procedure 56 (c). A fact is material only when its resolution affects the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252. In deciding a motion for summary judgment, the court must review the facts and all reasonable inferences in a light most favorable to the nonmoving party. See Canada v. Union Elec. Co., 135 F.3d 1211, 1212 (8th Cir. 1997). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).

In a motion for summary judgment, the movant bears the initial burden of proving the absence of any genuine issue of material fact that would preclude judgment for the movant. See City of Mt. Pleasant, Iowa v. Associated Elec. Co-op, Inc., 838 F.2d 268, 273 (8th Cir. 1988). Once the movant has met this burden, the non-movant may not rely on mere denials or bare

5

allegations, but must point to specific facts that raise a triable issue. See Anderson, 477 U.S. at 249. The non-movant must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of material fact for trial. See Celotex Corp. v. Citrate, 477 U.S. 317, 324 (1986). The Supreme Court has found that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Id. at 327 (quoting Fed. R. Civ. P. 1).

**B.      Plaintiff's Section 1981 Claim**

In Count V of her Complaint, plaintiff asserts a racial discrimination claim under 42 U.S.C. § 1981. Defendant argues that plaintiff is unable to establish a prima facie case of race discrimination because plaintiff cannot show that she was treated differently from a similarly situated employee. Defendant also argues that the City had a legitimate reason for terminating plaintiff, and that plaintiff is unable to demonstrate pretext. Plaintiff argues that she can present both direct and indirect evidence of intentional discrimination.

"Section 1981, as amended by the Civil Rights Act of 1991, provides a cause of action for discrimination in the employment relationship." Bogren v. Minnesota, 236 F.3d 399, 408 (8th Cir. 2000). See 42 U.S.C. § 1981(a), (b). To establish a claim under Section 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute. Thomas v. St. Luke's Health Sys., Inc., 869 F. Supp.1413, 1432 (N.D. Iowa1994). The court applies the same analysis to claims of discrimination under Title VII and 42 U.S.C. § 1981. Takele v. Mayo Clinic,

6

576 F.3d 834, 838 (8th Cir. 2009).

To prevail under this claim, plaintiff must demonstrate intentional discrimination. King v. Hardesty, 517 F.3d 1049, 1057 (8th Cir. 2008) (abrogated on other grounds). Intentional discrimination may be shown by either: (1) proof of 'direct evidence' of discrimination; or (2) a prima facie case of unlawful discrimination through indirect evidence under the McDonnell Douglas burden-shifting test, and then rebutting any proffered nondiscriminatory reasons for the employment decision with sufficient evidence of pretext. Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004); King, 517 F.3d at 1057. A plaintiff in an employment discrimination case, therefore, may avoid summary judgment by following the McDonnell Douglas framework *or* by presenting direct evidence of discrimination. Griffith, 387 F.3d at 736.

When relying on direct evidence to avoid summary judgment, the plaintiff must provide evidence:

> showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated[ ] the adverse employment action. Thus, "direct" refers to the causal strength of the proof, not whether it is "circumstantial" evidence. A plaintiff with strong (direct) evidence that illegal discrimination motivated the employer's adverse action does not need the three-part *McDonnell Douglas* analysis to get to the jury, regardless of whether his strong evidence is circumstantial.

Griffith, 387 F.3d at 736 (citation and punctuation omitted).

The term "direct evidence" has been defined to exclude "stray remarks in the workplace," "statements by nondecisionmakers," or "statements by decisionmakers unrelated to the decisional process itself." Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989); King, 517 F.3d at 1049. Direct evidence may include "evidence of actions or remarks of the employer that reflect a discriminatory attitude," "comments which demonstrate a discriminatory animus in the decisional

7

process," or comments "uttered by individuals closely involved in employment decisions." King, 517 F.3d at 1049 (quoting Beshears v. Asbill, 930 F.2d 1348, 1354 (8th Cir. 1991)).

Under the mixed motives test established in Price Waterhouse, "[i]f there is direct evidence of [race] discrimination, the burden rests with the employer to show that it more likely than not would have made the same decision without consideration of the illegitimate factor." Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1046 (8th Cir. 2005) (citing Price Waterhouse, 490 U.S. at 258). Plaintiff "may proceed under [the] Price Waterhouse [approach] if she produces direct evidence of conduct or statements by persons involved in the decision-making process, which indicate a discriminatory attitude was more likely than not a motivating factor in the employer's decision." Kratzer, 398 F.3d at 1045-46 (citing Price Waterhouse, 490 U.S. at 258). "At the summary judgement stage, the issue is whether the plaintiff has sufficient evidence that unlawful discrimination was a motivating factor in the defendant's adverse employment action. If so, the presence of additional legitimate motives will not entitle the defendant to summary judgment." Griffith, 387 F.3d at 735 (emphasis in original). "Therefore, evidence of additional motives, and the question whether the presence of mixed motives defeats all or some part of plaintiff's claim, are trial issues, not summary judgment issues." Id. See also Kratzer, 398 F.3d at 1046.

In this case, there is no dispute that plaintiff, who is black, is a member of a protected class; and that plaintiff's employment was terminated by defendant. The parties dispute whether plaintiff has demonstrated intentional discrimination.

Plaintiff claims that she has presented direct evidence of racial discrimination. Specifically, plaintiff contends that Alderman Richard Strawser stated, "We ain't giving that nigger nothing,"

8

in reference to plaintiff, immediately following the October 14, 2008 Board of Aldermen meeting during which plaintiff's employment was terminated.  Plaintiff has submitted the Affidavit of Junior Phillips, in which Mr. Phillips states that he was present at the October 14, 2008 Board meeting, and following the meeting, he overheard Alderman Strawser make the above-referenced statement.  (Doc. No. 32, Attach. 6).

Defendant first claims that this quote has not been previously revealed at any point in time during discovery in this lawsuit.  Defendant's argument lacks merit.  Plaintiff alleges in her Complaint that, immediately after the Board of Aldermen meeting at which she was terminated, Alderman Strawser stated in reference to her that the Board had "fired that nigger."  (Doc. No. 1, ¶ 23).  Further, plaintiff testified during her deposition that Sammy Ash called her and told her that Alderman Strawser stated "we finally got rid of that nigger," in the parking lot after the Board of Aldermen meeting.  (Doc. No. 29, Attach. 4, p. 65-66).  Plaintiff further testified that Junior Phillips was present during this conversation.  (Id. at 66).

Although the language of plaintiff's prior allegations regarding Alderman Strawser's statement differed from the language used in Mr. Phillips' Affidavit, plaintiff was not present when Alderman Strawser made the alleged statement.  Plaintiff's previous allegations were similar enough to Mr. Phillips' statement to place defendant on notice of plaintiff's claim.  Mr. Phillips' Affidavit corroborates plaintiff's previous allegations.  Mr. Ash indicated in his Affidavit that Mr. Phillips previously did not want to get involved in this lawsuit by executing any affidavits.  Plaintiff cannot be faulted for Mr. Phillips' prior unwillingness to participate in this lawsuit.

Defendant next contends that, assuming Alderman Strawser made the remark, it does not show a specific link between a discriminatory intent and the termination of plaintiff's employment.

9

The undersigned finds that Alderman Strawser's alleged statement constitutes direct evidence of discrimination. Alderman Stawser was one of three aldermen who made the decision to terminate plaintiff. He allegedly made the statement at issue immediately following the decision to terminate plaintiff. Alderman's Strawser alleged reference to plaintiff as a "nigger," an offensive racial slur, clearly reflects a discriminatory intent. The statement "[w]e ain't giving that nigger nothing," made immediately following the decision to terminate plaintiff by one of the decisionmakers implies a discriminatory animus in the decisional process. Due to the temporal proximity to the decision to terminate plaintiff, it cannot be said that this was a mere "stray remark." Although defendant contends that the context of Alderman Stawser's remark is unknown, it is hard to imagine a context in which this statement would indicate anything other than a discriminatory animus in the decision to terminate plaintiff.

Plaintiff has supported her allegation that Alderman Strawser made the statement at issue with the Affidavit of Mr. Phillips. Defendant has submitted affidavits from other individuals indicating that they did not hear Alderman Strawser make the statement. Determining the credibility of these statements is the function of a jury.

Defendant contends that it terminated plaintiff due to financial difficulties the City was experiencing. Plaintiff has introduced sufficient evidence that unlawful discrimination was a motivating factor in defendant's adverse employment action. The question of whether defendant had additional, legitimate motives for terminating plaintiff is a trial issue. See Griffith, 387 F.3d at 735.

Plaintiff also claims that she has presented indirect evidence of discrimination. Plaintiff alleges that she was treated differently from a white employee, Glenn Hayes. Specifically, plaintiff

10

claims that (1) Mr. Hayes was granted raises while she was denied raises; (2) plaintiff was asked to take a pay cut while Mr. Hayes was not; (3) defendant allowed Mr. Hayes to receive full salary even when he missed days and did not have compensatory time to cover the missed days, yet deducted plaintiff's compensatory time when she missed days; and (4) plaintiff and Mr. Hayes received the same salary even though plaintiff had worked for defendant longer and was required to work more hours; (5) one of the aldermen made repeated comments in plaintiff's presence that suggested she was paid too much but did not make such comments about Mr. Hayes; and (6) Mr. Hayes was retained by defendant while plaintiff was terminated due to alleged financial difficulty.

The undersigned has found that plaintiff has demonstrated intentional discrimination by presenting direct evidence of discrimination. As such, it is not necessary to apply the McDonnell Douglas framework with regard to plaintiff's indirect evidence of discrimination. See Griffith, 387 F.3d at 736.

The court finds that plaintiff has established a prima facie case of race discrimination under 42 U.S.C. § 1981. As such, defendant's Motion for Summary Judgment will be denied as to Count V of plaintiff's Complaint.

### C. Supplemental Jurisdiction of State Law Claims

Defendant argues that the court lacks jurisdiction over the state law claims asserted in Counts III and VIII. In Count III, plaintiff alleges that she was denied access to the minutes of the June 11, 2009 Board of Aldermen meeting in July of 2009 in retaliation for filing a claim of discrimination with the Missouri Commission on Human Rights. In Count VIII, plaintiff alleges that defendant violated the Missouri Sunshine Act by denying plaintiff the right to inspect and

copy the June 11, 2009 Board of Aldermen meeting minutes in July 2009.

Generally, this court only has jurisdiction to adjudicate claims based on either federal subject matter jurisdiction or diversity jurisdiction.  28 U.S.C. § 1331, 1332.  However, a "federal court has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and state-law claims in the case derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them all in one place."  Carnegie-Mellon University v. Cohill, 484 U.S. 343, 349 (1988).  The court's supplemental jurisdiction over state law claims arises under 28 U.S.C. § 1367(a).  This statute provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within the [court's] original jurisdiction."  28 U.S.C. § 1367(a).  The court may decline supplemental jurisdiction over claims when: (1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.  28 U.S.C. § 1367(c).  District courts have "broad discretion" in deciding whether to exercise supplemental jurisdiction over state law claims.  Green v. Ameritrade, Inc., 279 F.3d 590, 599 (8th Cir. 2002).

In this case, the discrimination alleged in Count V of plaintiff's Complaint is the basis of plaintiff's state law claims.  Plaintiff claims that defendant denied her access to Board of Aldermen meeting minutes in violation of the Missouri Sunshine Law.  Plaintiff alleges that defendant denied her access to these records in retaliation for filing a charge of discrimination with the Missouri Commission on Human Rights.  Plaintiff's charge of discrimination was based on the conduct

12

alleged in Count V.

The court finds that no reason to reject supplemental jurisdiction exists, and that it is appropriate to exercise supplemental jurisdiction over plaintiff's state law claims. These claims are interrelated, and it would be a waste of time, money, and judicial resources to require plaintiff to bring these claims in a separate, state court action.

**D.    Prima Facie Case of Counts III and VIII**

Defendant argues that plaintiff is unable to establish a prima facie case of retaliation under Count III, or of a violation of the Missouri Sunshine Act under Count VIII.

The Missouri Human Rights Act ("MHRA") prohibits any retaliatory act against an employee for participation in an investigation, hearing, or proceeding involving a charge of discrimination. See Cross v. Cleaver, 142 F.3d 1059, 1075 (8th Cir. 1998) (quoting Mo. Rev. Stat. § 213.070(2)). To prove a violation of the MHRA, a plaintiff alleging unlawful retaliation must prove (1) that [s]he engaged in protected activity, and (2) that "as a direct result, [s]he ...suffer[ed] any damages due to an act of reprisal." Keeney v. Hereford Concrete Prods., 911 S.W.2d 622, 625 (Mo. 1995) (en banc).

Plaintiff claims that on July 8, 2009, she requested copies of minutes from a Board of Aldermen meeting from Tracy Noble and Dawn Ferguson, the clerk and collector for defendant. Plaintiff alleges that Ms. Noble told her that the mayor had told them not to allow plaintiff any copies of documents at City Hall because plaintiff was suing defendant. Plaintiff claims that Ms. Ferguson also confirmed the mayor's instructions. Plaintiff alleges that defendant did not give her any copies until after she filed her retaliation charge with the EEOC on July 14, 2009. Plaintiff claims that she was damaged because she incurred additional time and fuel expense to return to

13

City Hall to obtain the minutes she requested after she filed her retaliation charge, and that she suffered shock and humiliation due to being denied access to records available to all other citizens.

Defendant claims that plaintiff is unable to assert a cause of action for retaliation because she suffered no damage. The language of Section 213.070 is broad, requiring only that a former employee who filed a complaint suffered *any damages* due to an act of reprisal. Keeney, 911 S.W.2d at 625 (emphasis added). In fact, the concurrence in Keeney disputed that the statute required any damages, stating "[a]lthough at least nominal damages may be a part of most acts for which the legislation would provide redress, this case does not require a decision to so limit the statute." Id. at 626.

The undersigned finds that plaintiff has sufficiently asserted a cause of action for retaliation under the MHRA. The facts surrounding plaintiff's request for the Board of Aldermen meeting minutes are disputed by the parties. Plaintiff has supported her allegations with her own deposition testimony and the deposition testimony of Mayor Redden, in which she states that she told Ms. Noble and Ms. Ferguson not to give plaintiff copies of Board minutes pertaining to plaintiff's lawsuit. (Doc. No. 32, Attach. 7, p. 63-64). Although plaintiff's alleged damages are nominal, under the MHRA, plaintiff is only required to show that she suffered "any damages." Keeney, 911 S.W.2d at 625.

Defendant also contends that plaintiff's Complaint fails to state an action under the Missouri Sunshine Law. To establish a violation of the Missouri Sunshine Law, plaintiff must allege: (1) her request for access to a public record; (2) the custodian of records received the request; and (3) the custodian did not respond within three business days thereafter. Pennington

14

v. Dobbs, 235 S.W.3d 77, 79 (Mo. Ct. App. 2007). See Mo. Rev. Stat. § 610.023.

In Count VIII of her Complaint, plaintiff alleges that, on July 8, 2009, after plaintiff filed her discrimination charge against defendant, defendant denied plaintiff copies of minutes of Board of Aldermen meetings, which are public records. Plaintiff testified in her deposition that defendant did not give her copies of the minutes until after she filed her retaliation charge with the EEOC on July 14, 2009. (Doc. No. 29, Attach. 4, p. 62).

The undersigned finds that plaintiff sufficiently pled a violation of the Missouri Sunshine Law. Plaintiff provides the date the request was made and the records she sought. Plaintiff alleges that defendant denied her request, and that the denial violated the Missouri Sunshine Law, which implies that she did not receive the records within the three-day time period provided by the statute. Plaintiff's deposition testimony reveals that she did not receive the minutes until after July 14, 2009, which was in fact more than three days after her request.

Plaintiff has established a prima facie case of retaliation under Count III, and of a violation of the Missouri Sunshine Act under Count VIII. As such, defendant's Motion for Summary Judgment will be denied.

Accordingly,

15

**IT IS HEREBY ORDERED** that Defendant City of Marston's Motion for Summary Judgment (Doc. No. 28) be and it **denied**.

Dated this 12th  day of March, 2012.

*Lewis M. Blanton*
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE